## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

**KEJAR BUTLER,**

      Plaintiff,

v.                                                   Civil Action No. 7:12-CV-150 (HL)

**SUNTRUST BANK**,

      Defendant.

## ORDER

This case is before the Court on Defendant SunTrust Bank's Motion for Summary Judgment (Doc. 32). For the reasons discussed below, the motion is granted.

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In determining whether a genuine dispute of material fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it is relevant or necessary to the outcome of the suit. Id. at 248.

A factual dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

## II.    FACTS

In January of 2005, Plaintiff, a black female, began working for SunTrust in Thomasville, Georgia. During the fall of 2011, Plaintiff took 8 weeks of leave for the birth of her child. Plaintiff was at that time the Assistant Branch Manager of the SunTrust Thomasville branch. While on maternity leave, the position of Branch Manager at the Thomasville branch became vacant. Plaintiff applied for the position. Upon return from her maternity leave, Plaintiff was interviewed along with two other internal candidates. Plaintiff was not selected for the Branch Manager position. Instead, Heather Barnes, a white female, was selected for the position.

Area Manager Joseph Vanden Bosch was the decision maker responsible for selecting the new Branch Manager.[1] Vanden Bosch had directly supervised and evaluated both Plaintiff and Barnes, and had also previously promoted Plaintiff within the organization.[2] As part of his supervision of Plaintiff, and prior to her applying for the Branch Manager position, Vanden Bosch coached Plaintiff on several performance issues, including the need for her to maintain an updated

---

[1] Vanden Bosch's choice for the Branch Manager position was approved by his boss and the local CEO.

[2] Vanden Bosch had previously promoted Plaintiff to Branch Manager of the in-store WalMart branch in Thomasville, but that branch was closed as part of a consolidation effort in Thomasville. Vanden Bosch also offered earlier in 2011 to promote Plaintiff to the position of Branch Manager for the in-store WalMart branch in Valdosta, but Plaintiff declined the promotion.

coaching log and to improve her below average client service scores. Plaintiff had also been notified through her evaluation in January of 2010 that she needed to improve her coaching.

Vanden Bosch interviewed both Plaintiff and Barnes. Barnes was interviewed in-person at Vanden Bosch's office in Albany. Plaintiff was interviewed by telephone.[3] Vanden Bosch waited until Plaintiff returned from maternity leave to interview her for the position. Because Plaintiff and Barnes were both internal candidates, Vanden Bosch was able to review both of their resumes, references, sales performance reports, client service scores, customer service reports, and evaluations. Vanden Bosch testified that leadership experience, banking experience, and education were key factors he considered when evaluating candidates for the Branch Manager position.

On the afternoon of her interview, Plaintiff received an email from SunTrust's Human Resources department informing her that she would not be receiving the Branch Manager position. Vanden Bosch confirmed by telephone that Plaintiff was no longer being considered for the position, and cited Plaintiff's poor client service scores and inadequate coaching logs as the two main reasons she was not selected.

---

[3] Plaintiff consented to a telephonic interview. Vanden Bosch was unable to travel to Thomasville to interview Plaintiff in person because of internal travel restrictions.

Vanden Bosch testified during his deposition that Plaintiff was not chosen for the position because her recent work history at SunTrust, in particular her coaching logs and low client service scores, and her overall performance in her interview showed him that she was not at the level expected to receive the promotion. Plaintiff had the lowest client service score in the South Georgia market that year. Vanden Bosch testified that Plaintiff had not demonstrated the ability to coach the team members she was assigned to coach. Further, Vanden Bosch was not impressed by Plaintiff's plan for coaching, or lack thereof, stated during her interview.

Barnes was selected for the Branch Manager position because of the leadership ability she had demonstrated, as well as consistent execution of client service levels expected of a manager. According to Vanden Bosch, "Ms. Barnes just demonstrated a better overall performance in those areas." Barnes also had higher customer service scores than Plaintiff and a more current coaching log.

Dissatisfied, Plaintiff emailed other members of SunTrust management to complain. When the subject was raised by upper management with Vanden Bosch, he stated that Plaintiff was not selected because Barnes was better qualified based on business development and coaching logs, and had performed better in prior roles. In a subsequent in-person meeting with Plaintiff, Vanden Bosch told her directly that she was not chosen because he believed Barnes was

more qualified. Vanden Bosch again told Plaintiff that she had problems with her coaching log and client service scores. Barnes' promotion became effective November 16, 2011.

## III.   DISCUSSION

Plaintiff alleges that SunTrust violated 42 U.S.C. § 2000e and 42 U.S.C. § 1981 by discriminating against her on the basis of race.[4] She also contends that SunTrust retaliated against her based on her exercise of rights under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA").[5] The Court will analyze each claim separately below.

### A.   Racial Discrimination Claim

Because Plaintiff has not presented any direct evidence of racial discrimination, her case is a circumstantial one, and the McDonnell Douglas burden-shifting analysis applies. *See* McDonnell Douglas v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must first establish a prima facie case of racial discrimination. In a failure to promote case, the plaintiff must demonstrate: (1) that she belongs to a protected racial class; (2) that she was qualified for the position at issue; (3) that

---

[4] The legal analysis is the same under both statutes. *See* Bryant v. Jones, 575 F.3d 1281, 1296 n. 20 (11th Cir. 2009) (noting that discrimination claims brought under the Equal Protection Clause, 42 U.S.C. § 1981, or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, are subject to the same standards of proof and employ the same analytical framework).

[5] Plaintiff has abandoned any FMLA interference claim.

despite her qualifications, she was rejected; and (4) the position was filled with an individual outside the protected class. Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768 (11th Cir. 2005). SunTrust concedes, for purposes of this motion, that Plaintiff is able to establish the elements of a prima facie case of racial discrimination.

The burden now shifts to SunTrust to produce a legitimate, non-discriminatory reason for the challenged employment action. Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997). SunTrust's burden on this prong is "exceedingly light"; it must merely proffer a non-discriminatory reason, not prove it. Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1142 (11th Cir. 1983). "The defendant need not persuade the court that it was actually motivated by the proffered reasons. . . .It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Id.

SunTrust proffers that Plaintiff was not selected for the position because she was not the most qualified candidate. This decision was based on Plaintiff's recent work history, including her inadequate coaching logs and low client services scores. In addition, Plaintiff did not perform well in her interview. SunTrust states that Barnes was chosen because she was the most qualified candidate, as reflected by her higher client service scores and demonstrated leadership performance. SunTrust has met its burden of production. The

selection of the candidate deemed to be the most qualified, even if based on the subjective criteria of the decision maker, is legally sufficient to meet the defendant's burden of production. *See* Springer v. Convergys Customer Mgmt. Group, Inc., 509 F.3d 1344, 1348-1350 (11th Cir. 2007).

Thus, the burden now shifts back to Plaintiff to prove by a preponderance of the evidence that SunTrust's proffered legitimate reason was a pretext for discrimination. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001). If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot merely recast the reason, but must "meet that reason head on and rebut it." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000). An employer's reasons may be shown to be pretext "by revealing such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [its] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Springer, 509 F.3d at 1348 (quotation marks omitted). A reason cannot be "pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (internal quotation marks omitted) (emphasis in original); *see also* Brooks v. County Comm'n of Jefferson County, 446 F.3d 1160, 1163 (11th Cir. 2006).

Plaintiff's chief argument is that she was more qualified than Barnes. For a failure to promote claim, a "plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [employee] who received the position he coveted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race." Alexander v. Fulton County, Ga., 207 F.3d 1303, 1339 (2000), *overruled on other grounds*, Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003). Rather, the plaintiff must "show that the disparities in qualifications [are] of such weight and significance that no reasonable person, in the exercise of impartial judgment could have chosen the candidate selected over the plaintiff for the job in question." Brooks, 446 F.3d at 1163 (quoting Cooper v. S. Co., 300 F.3d 695, 732 (11th Cir. 2004), *overruled on other grounds*, Ash v. Tyson Foods, 546 U.S. 454, 457, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006)).

With this standard in mind, the Court looks at the qualifications of Plaintiff and Barnes. Plaintiff has a bachelor of arts degree in business administration. She interned at a bank for two summers during college. After college, she worked for two hotels in sales and catering. Plaintiff began working for SunTrust in 2005 as an Assistant Branch Manager at the WalMart in-store branch in Thomasville. In 2008 she was promoted to Branch Manager. After the three Thomasville branches were consolidated, Plaintiff was made the Assistant

8

Branch Manager at the consolidated branch. She has taken many training courses through SunTrust. Plaintiff holds life, health, and variable insurance licenses in both Florida and Georgia, as well as her FINRA/Series 6 designation.

Barnes has an associate's degree in Business Management. She also holds a certificate as a "Customer Service Specialist" from Southwest Georgia Technical College. In 2007, Barnes began working for SunTrust as a Part-Time Teller at the Thomasville in-store branch. After three months, Barnes was promoted to the position of Financial Service Representative. She was then promoted to Assistant Branch Manager of the Moultrie branch, where she served for approximately one year. Barnes left for a job with State Farm for six months, but resumed the Branch Manager position at the Moultrie branch in December of 2010. Barnes has life, health, and property and casualty insurance licenses through SunTrust. She is a Thomasville native and is a member of Kiwanis and the Chamber of Commerce.

Upon review, the Court finds that Plaintiff has not shown based on the evidence regarding the candidate's qualifications that no reasonable person would have chosen Barnes over Plaintiff. The Court simply does not see the disparity in qualifications urged by Plaintiff.[6] The fact Plaintiff subjectively

---

[6] Plaintiff believes more weight should have been given to her bachelor's degree versus Barnes' associate's degree. But a bachelor's degree was not required for the position. In fact, only a high school diploma was required, which both candidates possessed. Plaintiff is simply second guessing SunTrust's business decision. *See* Chavez v. URS Fed. Technical Servs., Inc., 504 F.App'x 819, 823 (11th Cir. 2013) (finding that although the plaintiff held bachelor's and master's degrees, and the promotee had only an

believes she was the most qualified candidate holds no weight. *See* Brooks, 446 F.3d at 1163-64 (the inquiry at the third stage of the McDonnell Douglas analysis of a failure to promote claim is not concerned with the plaintiff's belief that she was more qualified than the person hired). Further, "whether we could conclude [the plaintiff] was better qualified than [the promotee] is not the issue here." Cooper, 390 F.3d at 744.

In addition, the record includes evidence that Plaintiff had job performance issues. While Plaintiff argues about whether she should have been subjected to corrective action and whether SunTrust was justified in considering these issues in its evaluation of her, Plaintiff certainly has not directed the Court to any evidence that Barnes had similar job performance issues.

This Court's role is not to "sit as a super-personnel department that reexamines an entity's business decisions." Chapman, 229 F.3d at 1030 (quotations omitted). "Generally, in the context of a business deciding how to rank its employees, we will not 'second-guess the business decisions of an employer.'" Lucas v. Secretary, Dept. of the Army, 455 F.App'x 911, 913 (11th Cir. 2012) (quoting Rowell v. BellSouth Corp., 433 F.3d 794, 798 (11th Cir. 2005)). Even assuming Plaintiff was more qualified than Barnes, the disparity

---

associate's degree, "their educational disparities are not weighty or significant enough that no reasonable person could have chosen Mr. Sweeney); Raper v. Morgan County Bd. of Educ., No. CV-11-S-80-NE, 2013 WL 988081, at *10 (N.D. Ala. Mar. 13, 2013) (to the extent the plaintiff argued that the employer should have given greater weight to the fact he held a doctoral degree versus the promotee's master's degree, he was merely questioning the employer's business judgment).

between the two was not so great that no reasonable person could have passed over Plaintiff.  Accordingly, Plaintiff cannot demonstrate that SunTrust's proffered non-discriminatory reasons for promoting Barnes were pretextual.

Plaintiff also argues that evidence of pretext exists because SunTrust failed to follow its own policies. While Plaintiff is correct that an employer's failure to follow its own policies may support an inference of pretext, *see* Ash v. Tyson Foods, Inc., 129 F.App'x 529, 533 (11th Cir. 2005), *rev'd on other grounds*, 546 U.S. 454, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006), failure to follow internal procedures is generally not enough to create a genuine issue of fact as to discriminatory motive. *See* Grubb v. Southwest Airlines, 296 F.App'x 383, 390 (5th Cir. 2008) (citing Moore v. Eli Lilly & Co., 990 F.2d 812, 819 (5th Cir. 1993)).

Plaintiff contends that as an Assistant Branch Manager she was not required to maintain coaching logs. She argues that because there was no such requirement, the proffered reason that Plaintiff was not promoted because she did not adequately maintain her coaching logs was pretext for discrimination. However, this contention is directly contradicted by Plaintiff's own deposition testimony wherein she testified that she understood from Vanden Bosch that it was a requirement that she have a written coaching log. (Butler Dep. at 46). Plaintiff also testified that her direct supervisor, Craig Dowdy, told her "you have to update the coaching log" (Butler Dep. at 46), and expressed concern to

Plaintiff "about keeping the log updated." (Butler Dep. at 53). In addition, Mardie Herndon, a former high ranking SunTrust official, testified that "maintaining coaching logs is a foundational component of the operating model," and that assistant branch manager and branch managers attended coaching training and "to follow up on that and maintain coaching logs was an expectation." (Herndon Dep. at 15). Further, Plaintiff's Mid-Year Review for the time period of January 1 to July 1, 2010 specifically makes reference to training needs and action plans being documented in a coaches' log, and there is a manager comment about Plaintiff's coaching logs. (Doc. 50-1 at 6). Similarly, her 2011 Mid-Year Review, which was completed prior to Plaintiff's interview for the Branch Manager position, states: "Assistant Branch Managers will assist the Branch Manager with coaching of teammates on service and sales, operations and career development (i.e. My Next Move), as required. Coaching conversations will be documented on the In-The-Action Coaching Log and Monthly Coaching Planners." (Doc. 50-2 at 9). The maintenance of an In-Action Coach Log and Monthly Coaching Planner is also listed as a standard expectation. (Doc. 50-2 at 9).

Plaintiff also claims that pretext can be established through the fact that she was never subjected to corrective action for her customer service scores. However, Plaintiff has not pointed to any actual SunTrust policy regarding this

alleged corrective action policy, and in any event, Plaintiff acknowledged in her deposition that she did in fact have low customer service scores in 2011. It is in no way discriminatory for the decision maker to have considered this objective evidence.

Plaintiff also contends that SunTrust violated its job posting policy by allowing Barnes to post for the Branch Manager position when she had not been in her current position for one year. But there is an exception to the posting eligibility policy that appears from the evidence to have been met with respect to Barnes.

Finally, the fact that Plaintiff's interview was done telephonically rather than in-person does not establish pretext. Plaintiff has pointed to no policy mandating in-person interviews, and it appears the only reason Barnes was interviewed in person was because she was in Albany, where Vanden Bosch's office was located, for another meeting. He did not go to Barnes for the interview.

Plaintiff's final argument is that Barnes was preselected for the Branch Manager position, and such preselection is evidence of pretext. The law in the Eleventh Circuit is clear that the preselection of a candidate does not necessarily indicate racial discrimination. *See* Springer, 509 F.3d at 1350 ("[E]ven where preselection violates corporate personnel policies, it does not necessarily indicate racial discrimination."); Haugabrook v. Cason, 518 F.App'x 803, 808

(11th Cir. 2013); <u>Alexander v. Baldwin County Bd. of Educ.</u>, No. 07-0333-CB-C, 2008 WL 3551194, at *7 (S.D. Ala. Aug. 12, 2008) (preselection alone is not evidence of pretext or discriminatory intent). In the absence of other evidence suggesting racial discrimination, Plaintiff's evidence of preselection is insufficient to survive summary judgment.[7]

Courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." <u>Damon v. Fleming Supermarkets of Fla., Inc.</u>, 196 F.3d 1354, 1361 (11th Cir. 1999). As Plaintiff has not established pretext, SunTrust is entitled to summary judgment on Plaintiff's racial discrimination claim brought pursuant to Title VII and 42 U.S.C. § 1981.

### B.    FMLA Retaliation Claim

Plaintiff's second claim is that she was not promoted because she had exercised her rights under the FMLA by taking maternity leave. The FMLA authorizes an eligible employee to take up to twelve weeks of unpaid leave per year for a "serious health condition that makes the employee unable to perform the functions of the position of such employee." <u>Hurlbert v. St. Mary's Health</u>

---

[7] Plaintiff's evidence of preselection is quite thin. Her deposition and affidavit refer to "speculation" and "rumors" that Barnes was preselected for the position. (Butler Aff. at ¶¶ 39-40; Butler Dep. at 95-96). She also cites to a number of hearsay statements. (Butler Aff. at ¶ 42; Butler Dep. at 85-87). Plaintiff contends that Barnes stated to Plaintiff that she had been chosen for the position prior to Plaintiff's interview, but Barnes stated in her deposition that she was not aware of the promotion until she received her offer letter, which was sent after Plaintiff's interview. (Barnes Dep. at 50).

Care Sys., Inc., 439 F.3d 1286, 1293 (11th Cir. 2006). An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" that right. Id.

Absent direct evidence of retaliatory intent, the McDonnell Douglas burden shifting framework applies to FMLA claims of retaliation. Martin v. Brevard County Pub. Sch., 543 F.3d 1261, 1268 (11th Cir. 2008). A prima facie case of retaliation requires a plaintiff to show that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse decision; and (3) the decision was causally related to the protected activity. Id. If the plaintiff successfully makes a prima facie showing, the burden shifts to the employer to articulate a legitimate reason for the adverse action. Id. If the employer does so, the employee must show that the proffered reason was pretextual. Id. (internal quotation marks omitted).

Taking the evidence in the light most favorable to Plaintiff, the Court will assume, without deciding, that she has established a prima facie case of retaliation under the FMLA.[8] Nevertheless, Plaintiff's retaliation claim still fails, as she has not raised a triable issue as to whether the employment action was

---

[8] (1) She engaged in statutorily protected activity (she took FMLA leave); (2) she suffered an adverse employment decision (she was not promoted); and (3) the decision was causally related to the protected activity (she was notified that she did not receive the promotion the same day she returned from her maternity leave). With respect to the third prong, "[t]he general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." Brungart v. BellSouth Telecomm., Inc., 231 F.3d 791, 799 (11th Cir. 2000).

motivated by an impermissible retaliatory or discriminatory animus. As outlined in connection with the Title VII claim, SunTrust articulated a legitimate, non-discriminatory reason for Plaintiff not receiving the promotion unrelated to her leave - she was not the most qualified candidate - and, as also discussed above, Plaintiff has not presented sufficient evidence demonstrating that this reason is nothing more than a pretext for a retaliatory motive. Therefore, Plaintiff's FMLA retaliation claim fails, and SunTrust is entitled to summary judgment on this claim.

## IV.    CONCLUSION

For the reasons discussed above, SunTrust's Motion for Summary Judgment (Doc. 32) is granted. The Clerk of Court is directed to enter judgment in favor of SunTrust and close this case.


**SO ORDERED**, this the 11th day of February, 2014.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

mbh